UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

CARY LEE STOKES,

        Plaintiff,               Case No. 2:14-cv-250

v.                                       Honorable R. Allan Edgar

J. CEBULA et al.,

        Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 *et seq.* The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Cary Lee Stokes is incarcerated by the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility, though the events giving rise to the complaint occurred while he was incarcerated at the Newberry Correctional Facility (NCF). He sues the following MDOC employees at NCF: Warden M. Perry, Deputy Warden C. Daley, Resident Unit Manager (RUM) L. Olson, and Library Technician J. Cebula.

Plaintiff alleges that on November 11, 2013, he requested assistance from the facility's Legal Writer Program. According to MDOC Policy Directive 05.03.116, this program "provides eligible prisoners . . . with legal assistance on matters relating to their criminal conviction or conditions of confinement. Only prisoners not represented by counsel who are unable to effectively help themselves by using the law library or other available legal resources are eligible to receive Legal Writer Program services." (MDOC Policy Directive 05.03.116 ¶ R, docket #1-1, Page ID#14.) Library Technician Cebula concluded that Plaintiff did not meet the criteria for eligibility and denied Plaintiff's request. Plaintiff appealed that determination by filing a prisoner grievance. In his grievance, Plaintiff asserted that he has a "significant mental disability" which is documented in his prison file. (Grievance No. NCF131100827014Z, docket #1-1, Page ID#17.) RUM Olson interviewed Plaintiff regarding the grievance. Plaintiff allegedly told Olson that he has "extensive and multi-faceted mental health problems [that] constitutionally entitle[] him to the assistance of [a] legal writer." (Compl., docket #1, Page ID#3.) Olson rejected the grievance, noting that Plaintiff has a GED and that Olson could not find documentation to support Plaintiff's claim. (Step I Grievance Response, docket #1-1, Page ID##18-19.) Deputy Warden Daley approved Olson's response.

Plaintiff appealed the denial of his grievance to Step II of the grievance process, claiming that "it is well documented that [he] . . . has an extensive history of suffering from said mental illness." (Step 2 Response, docket #1-1, Page ID#21.) Warden Perry reviewed the grievance appeal and rejected it, noting that Plaintiff successfully completed his GED in 2000, that a "Career Scope Summary Report" from January 2007 "displayed form and clerical perception scores in the above average range (91%tile and 83%tile, respectively)," and that the warden's office could find "no documented substantiation of physical or psychological problems or intellectual deficiency on file for [Plaintiff]." (Memo. to Plf., docket #1-1, Page ID#22.)

Plaintiff claims that the warden selectively relied upon older records of Plaintiff's mental state, while more recent records demonstrate "an array of 'psychological problems' and/or 'learning disabilit[ies] which may affect [Plaintiff's] ability to use the law library to prepare and file a coherent pleading.'" (Compl., Page ID#4.)  Plaintiff asserts that he has "clearly . . . suffered a diminished capacity over the years that the defendants refused and/or neglected to acknowledge." (*Id.*)  According to Plaintiff, his "mental health files" demonstrate that he is "mentally disabled" under the ADA and should not have been denied assistance from the Legal Writer Program.  (*Id.* at Page ID#7.)

In support of his assertions, Plaintiff ostensibly relies upon records attached to his complaint.  Those records indicate the following: he was referred to the MDOC's mental health program in 2011 (Attach. to Compl., docket #1-1, Page ID#24); he received Social Security income in 2010 on account of an unspecified disability (*id.* at Page ID##25-26); he was diagnosed as suffering from "major depressive disorder" with psychotic behavior in January 2011 (*id.* at Page ID##28, 33, 38), and was prescribed Seroquel and Citalopram Hydrobromide at that time (*id.* at Page

ID#29); in February 2011, a psychiatrist noted that Plaintiff was having trouble sleeping, and his speech and movement were slow, but the medication prescribed for him was helping his mood and ability to sleep (*id.* at Page ID#34); over a period of several months starting in January 2006, Plaintiff met with a Saginaw County community mental health caseworker on various occasions to discuss issues related to homelessness, depression, and posttraumatic stress (*id.* at Page ID##39-56); Plaintiff started seeing a therapist in February 2006, who prescribed Celexa for his depression (*id.* at Page ID#51); in August 2006, a psychiatrist diagnosed Plaintiff as suffering from a depressive disorder, noting that Plaintiff's mood was depressed, but his speech was "coherent, relevant and decreased in volume and rate," his "remote, recent and immediate memory was not impaired," he did well "on similarities and differences" and "calculations," and his "formal judgment" was not impaired (*id.* at Page ID#57); Plaintiff was prescribed Prozac from August 2006 to November 2006 (*id.* at Page ID##57-65).

Based on the foregoing, Plaintiff contends that Defendants have discriminated against him, denied him access to the courts in violation of the Sixth Amendment, and denied him due process and equal protection under the Fourteenth Amendment. Plaintiff further claims that he is a qualified individual with a disability under the ADA; consequently, Defendants were required to give him assistance through the Legal Writer Program. In addition, Plaintiff contends that Defendants engaged in criminal conduct in violation of 18 U.S.C. § 242. As relief, Plaintiff seeks an injunction and damages.

## Discussion

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### I. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Access to the Courts

Plaintiff claims that Defendants have denied him access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right is derived from the Due Process Clause of the Fourteenth Amendment and the First Amendment right to petition for redress of grievances. *Knop v. Johnson*, 977 F.2d 996, 1002 (6th Cir. 1992). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Bounds*, 430 U.S. at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop*, 977 F.2d at 1009.

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.

*Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).

Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous). The Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff's complaint does not indicate how the lack of assistance from a legal writer impaired or prevented him from pursuing a non-frivolous legal claim. He merely asserts that he has unidentified psychological problems and learning disabilities, and that these "may" impair his ability to assert a coherent pleading. (Compl., docket #1, Page ID#4.) The attachments to Plaintiff's complaint indicate that he has suffered from depression and an inability to sleep in the past, possibly

stemming from post-traumatic stress. He does not indicate, however, how any of these prior conditions impairs his present ability to prepare adequate legal pleadings, and the vague references to mental health problems and learning disabilities do not permit the Court to reasonably infer such an impairment. Indeed, the Court notes that Plaintiff appears to have prepared the pleadings filed in this case, as well as the grievance and grievance appeals attached to the complaint, without assistance from the Legal Writer Program, yet all of these documents are coherent and well-organized. They certainly do not support Plaintiff's contention that he needs assistance presenting a claim in court. In short, Plaintiff's assertion that he is impaired in his ability to prepare legal pleadings, such that he needs assistance from the Legal Writer Program in order to exercise his right of access to the courts, has no factual support in the complaint.

Furthermore, even assuming that Plaintiff cannot meaningfully proceed with a legal action without assistance from the Legal Writer Program, his claim is deficient because he fails to describe a non-frivolous action that was impaired, as required by *Christopher*. In other words, he does not allege that he suffered any significant injury as a result of Defendants' actions. Consequently, for all the foregoing reasons, he does not state an access-to-courts claim.

### B.  Sixth Amendment

Plaintiff also cites the Sixth Amendment as a basis for his § 1983 action. The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." Plaintiff has not alleged that Defendants interfered with or prejudiced him in any criminal proceeding; he has no Sixth Amendment right to counsel in a civil proceeding. *See, e.g.*, *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993). Consequently, Plaintiff fails to state a claim under the Sixth Amendment.

### C. Due Process

Plaintiff also claims that he was deprived of due process. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Plaintiff fails to state a due process claim because he does not have a protected interest in receiving assistance through the prison's Legal Writer Program. In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to *Sandin*, a prisoner is entitled to the protections of due process only when the deprivation "will inevitably affect the duration of his sentence" or when it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). In *Sandin*, the Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. Likewise, depriving a prisoner of access to legal-writing assistance does not impose a hardship in relation to the ordinary incidents of prison life. The very fact that access to the Legal Writer Program is limited to a narrow category of prisoners—those who unable to effectively help themselves—indicates that assistance is not typical. Moreover, as discussed in Section I.A *supra*, Plaintiff has not alleged any significant hardship as a result of being deprived of such access. Consequently, he does not state a due process claim.

### D. Equal Protection

Plaintiff further contends that Defendants discriminated against him, thereby denying him equal protection. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, Plaintiff does not have a fundamental right under the Constitution to receive assistance in preparing and filing legal claims. He does have a fundamental right to access the courts, but that right is not implicated here. *See* Section I.A *supra*.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's discrimination claim is wholly conclusory. He merely concludes that Defendants discriminated against him; he does not allege any facts indicating that he has been treated differently from similarly-situated individuals. Thus, he fails to state a viable equal protection claim.

### E. Prison Policy

Plaintiff's claim involves Defendants' application of a prison policy regarding access to the Legal Writer Program. To the extent he asserts that Defendants misapplied this policy, he does not state a claim under § 1983. An alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

For all the foregoing reasons, therefore, Plaintiff does not state a claim under § 1983.

### II. ADA

Plaintiff also cites the ADA as a basis for relief. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, to state a claim, Plaintiff's allegations must show that he is a "qualified individual with a disability," and that he was

discriminated against or denied participation in a "service, program, or activity" of the state on account of his disability. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Plaintiff's complaint concerns the denial of a request for assistance from the Legal Writer Program. To the extent that this program is a "service, program or activity" of the state under the ADA, Plaintiff does not claim that he was denied access to the program because of his disability. To the contrary, Defendants allegedly denied his request by *ignoring* evidence of his disability. Instead, Plaintiff claims that Defendants denied his request for an accommodation for his disabilities. He asserts that because he has mental health problems and learning disabilities, he may need legal writing assistance to prepare a coherent pleading. Thus, he ostensibly claims that Defendants effectively prevented him from enjoying the full benefit of legal resources that are generally available to non-disabled prisoners (e.g., the law library and materials used to prepare legal documents). This claim fails, however, because Plaintiff's allegations do not indicate how his mental health problems and disabilities substantially limit a major life activity or otherwise impair his ability to prepare legal documents. The fact that he has a history of severe depressive episodes has no necessary or obvious connection to his present ability to prepare legal materials. Plaintiff implies that he has ongoing mental health problems and permanent learning disabilities, but he does not describe any such problems or disabilities in any detail, either in the complaint or in the grievance documents requesting access to the legal writing program. Instead, he merely refers to "problems" and "disabilities" that "may" impair his ability to prepare a coherent pleading. (*See* Compl., Page ID#4.)

Such allegations are far too vague to permit the court to infer more than the "mere possibility" that he is disabled or that he has been denied the benefit of a program, service or activity on account of a disability. *See Iqbal*, 556 U.S. at 679.

Similarly, none of the medical records attached to the complaint describe any permanent learning disabilities or cognitive deficits that would impact his ability to read, write or think coherently. In fact, they suggest otherwise. As indicated, one of the physicians examining Plaintiff in 2006 determined that his speech was coherent, and his memory and ability to perform simple calculations were not impaired. Thus, for all the foregoing reasons, the complaint does not "show" that Plaintiff was discriminated against, or was denied the benefit of a service, program or activity, on account of a disability. *See Iqbal*, 556 U.S. at 679. Consequently, he does not state a claim under the ADA.

### III. <u>18 U.S.C. § 242</u>

Finally, Plaintiff fails to state a claim under 18 U.S.C. § 242, which makes it a crime for a person acting "under color of any law" to willfully deprive another person of their constitutional rights. *Id.* The latter statute does not create a private cause of action. *See Booth v. Henson*, 290 F. App'x 919, 920–21 (6th Cir. 2008) (stating that a private citizen lacks standing to file an action under criminal statutes 18 U.S.C. §§ 241 and 242); *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) (holding that the district court properly dismissed defendant's claim filed pursuant to 18 U.S.C. §§ 241 and 242 because he had no private right of action under either of those criminal statutes). Moreover, as a private citizen, Plaintiff cannot compel the criminal prosecution of Defendants for violating § 242 because he "'lacks a judicially cognizable interest in the prosecution

or nonprosecution of another.'" *Diamond v. Charles*, 476 U.S. 54, 64 (1986) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: 1/20/2015                                  /s/ R. Allan Edgar
                                                  R. ALLAN EDGAR
                                                  UNITED STATES DISTRICT JUDGE